SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
and
Securities Investor Protection Corporation, Applicant-Appellee,

v.

ALAN F. HUGHES, INC. and Alan F. Hughes, Defendants-Appellants.

Nos. 675, 676, Dockets 72-1118, 72-1196.

United States Court of Appeals, Second Circuit.

Argued March 10, 1972.

Decided April 21, 1972.

---

3. King Stores involved a similar scheme to defraud creditors by purchasing items on credit.

John Barry Donohue, Jr., Washington, D. C. (Shipley, Akerman, Stein & Kaps, Washington, D. C., on the brief), for appellants.

Richard E. Nathan, Asst. Gen. Counsel, SEC, Washington, D. C. (G. Bradford Cook, Gen. Counsel, and David Ferber, Solicitor, SEC, Washington, D. C., on the brief), for Securities and Exchange Commission.

Theodore H. Focht, Gen. Counsel, SIPC, Washington, D. C. (B. G. Minisman, Jr., Atty., SIPC, Washington, D. C., on the brief), for Securities Investor Protection Corporation.

Before FRIENDLY, Chief Judge, TIMBERS, Circuit Judge, and JAMESON, District Judge.*

TIMBERS, Circuit Judge:

In this case of first impression under the Securities Investor Protection Act of 1970,[1] the essential issue

---

* Senior District Judge of the District of Montana, sitting by designation.

1. 15 U.S.C. § 78aaa et seq. (1970) (hereinafter, "the 1970 Act").

raised on these appeals is the propriety of the district court's adjudication that the customers of Alan F. Hughes, Inc., a registered broker-dealer, were in need of the protection provided by that Act, the primary purpose of which is to afford protection to public customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations to their public customers.

There are two appellants, Alan F. Hughes, Inc. and Alan F. Hughes; the latter is the principal stockholder, a director and president of the former. They appeal from two orders of the District Court for the Northern District of New York, James T. Foley, Chief Judge. On December 13, 1971, upon application of the SEC, the district court appointed an equity receiver for Hughes, Inc. On January 17, 1972, acting pursuant to § 5(b) (1) and (3) of the 1970 Act, 15 U.S.C. § 78eee(b) (1) and (3) (1970), the district court made an adjudication that the customers of Hughes, Inc. were in need of the protection afforded by the 1970 Act and appointed a trustee for the liquidation of the broker-dealer. While appellants challenge the appointment of both the receiver and the trustee, these appeals primarily concern the appointment of the the trustee pursuant to the 1970 Act, the trustee having superseded the receiver in control of the assets and affairs of Hughes, Inc. For the reasons stated below, we affirm both orders of the district court.

### I.

Before turning to the issues raised on appeal, a brief statement of the essential facts may be helpful to an understanding of our rulings on those issues.

On August 18, 1971, the SEC filed a complaint in the district court alleging that Hughes, Inc., aided and abetted by its president, Alan F. Hughes, had violated those provisions of the Securities Exchange Act of 1934, and rules promulgated thereunder, requiring proper maintenance of records,[2] requiring maintenance of a minimum net capital position,[3] prohibiting hypothecation of customers' securities in certain situations [4] and prohibiting fraud in connection with the purchase or sale of securities.[5] The SEC requested injunctive relief against further violations of these provisions and also requested the appointment of a receiver.

On September 7, 1971, appellants consented to a permanent injunction against further violations of the various provisions of the 1934 Act, and rules promulgated thereunder, without admitting or denying the allegations of the complaint. Appellants, however, did not consent to the appointment of a receiver. Oral argument on the question of a receivership was heard by Chief Judge Foley on September 7. Rather than appointing a receiver at that time, the court proceeded cautiously and appointed a Special Fiscal Agent to make a careful examination of the books and records of Hughes, Inc. and to report back to the court on the need for the appointment of a receiver and the need, if any, for liquidation of the business of Hughes, Inc.

On October 27, 1971, the Special Fiscal Agent, William J. Quinlan, Esq., of Schenectady, filed his report with the court. Fully supported by documentary evidence, the report concluded that "defendant's books and records are so unreliable, inaccurate, incomplete and misleading that they are unusable." The Special Fiscal Agent also advised the

2. Section 17(a) of the 1934 Act, 15 U.S.C. § 78q(a) (1970), and Rules 17a–3 and 17a–4 promulgated thereunder, 17 CFR §§ 240.17a–3 and 240.17a–4 (1971).

3. Section 15(c) (3) of the 1934 Act, 15 U.S.C. § 78o(c) (3) (1970), and Rule 15c3–1 promulgated thereunder, 17 CFR § 240.15c3–1 (1971).

4. Section 15(c) (2) of the 1934 Act, 15 U.S.C. § 78o(c) (2) (1970), and Rule 15c2–1 promulgated thereunder, 17 CFR § 240.15c2–1 (1971).

5. Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5 (1971).

court that Hughes, Inc. had engaged in acts and practices which "reflect[ed] on defendant's integrity as a broker" and which were more than mere technical violations of law.

After receiving the report of the Special Fiscal Agent and hearing additional oral argument, the court, in a Memorandum-Decision and Order of December 13, 1971, adopted the findings and conclusions of the Special Fiscal Agent; found clear violations of the SEC's bookkeeping, net capital and hypothecation rules; and appointed William J. Quinlan, Esq. as receiver. While the receiver was directed "to marshal all . . . assets and property, prosecute all claims, choses-in-action and suits in equity on behalf of [Hughes, Inc.]", his appoint- ment extended only "until such time as . . . the Securities Investor Protection Corp. makes a determination whether to install its own trustee pursuant to Section 5(a) (2) of the [1970 Act], . . . and a trustee is so installed." During the limited period of his appointment the receiver was authorized to liquidate only "if necessary". On December 23, 1971, appellants filed a notice of appeal from the court's order, but did not seek a stay at that time.

Thereafter, the Securities Investor Protection Corporation ("SIPC") determined that Hughes, Inc. was in danger of failing to meet its obligations to its customers and that there existed one or more of the conditions specified in § 5 (b) (1) (A) of the 1970 Act.[6] Accord-

---

6. Section 5 of the 1970 Act, 15 U.S.C. § 78eee (1970), provides in pertinent part:

"(a) Determination of need of protection.

\* \* \*

(2) Action by SIPC.

If SIPC determines that any member has failed or is in danger of failing to meet its obligations to customers and that there exists one or more of the conditions specified in subsection (b) (1) (A) of this section, SIPC, upon notice to such member, may apply to any court of competent jurisdiction specified in section 78aa or 78u(e) of this title for a decree adjudicating that customers of such member are in need of the protection provided by this chapter.

\* \* \*

(b) Court action.

(1) Issuance of decree.

(A) Findings by court.

A court to which application is made pursuant to subsection (a) (2) of this section shall grant the application and issue a decree adjudicating that customers of the member named in the application are in need of protection under this chapter if it finds that such member—

(i) is insolvent within the meaning of section 1(19) of Title 11, or is unable to meet its obligations as they mature, or

(ii) has committed an act of bankruptcy within the meaning of section 21 of Title 11, or

(iii) is the subject of a proceeding pending in any court or before any agency of the United States or any State in which a receiver, trustee, or liquidator for such member has been appointed, or

(iv) is not in compliance with applicable requirements under the 1934 Act or rules or regulations of the Commission or any self-regulatory organization with respect to financial responsibility or hypothecation of customers' securities, or

(v) is unable to make such computations as may be necessary to establish compliance with such financial responsibility or hypothecation rules or regulations.

\* \* \*

(3) Appointment of trustee.

If the court grants an application and makes an adjudication under paragraph (1), the court shall forthwith appoint as trustee for the liquidation of the business of the debtor in accordance with section 78fff of this title, and as attorney for such trustee, such persons as SIPC shall specify. No person shall be appointed as such trustee or attorney if such person is not 'disinterested' within the meaning of section 558 of Title 11."

ingly, SIPC applied to the court for an adjudication that the customers of Hughes, Inc. were in need of the protection provided by the 1970 Act. On January 17, 1972, the court granted SIPC's application and appointed William J. Quinlan, Esq. as trustee for the liquidation of Hughes, Inc., pursuant to § 5(b)(3) of the 1970 Act. The trustee superseded the receiver in control of the assets and affairs of Hughes, Inc.

After the district court denied appellants' motion for reconsideration and for a stay pending appeal, appellants moved in this Court for a stay pending appeal. The parties before us agreed that, pending a decision by this Court on the merits of the appeal, the trustee could process customer claims, deliver specifically identifiable property to customers, pay or otherwise satisfy customer claims within the purview of the 1970 Act and complete contractual commitments, but that he should not proceed with the actual liquidation of Hughes, Inc.

## II.

Appellants' first contention is that the district court's appointment of the trustee under the 1970 Act denied them due process, as SIPC failed to provide them with notice and a hearing as to SIPC's determination that there was a danger that Hughes, Inc. would fail to meet its obligations to its customers within the meaning of § 5(a)(2) of the 1970 Act.

■ We hold that due process does not require that an opportunity for a hearing be afforded at the time SIPC makes its initial determination that one of its members [7] has failed or is in danger of failing to meet its obligations to its customers and that there exists one or more of the conditions specified in § 5(b)(1)(A). That initial determination, in and of itself, has no binding legal consequences and deprives no bro-

ker-dealer of property. Rather, SIPC's determination is merely a preliminary step in the process by which it decides to apply to a district court for a decree adjudicating that the customers of a SIPC member firm are in need of the protection provided by the 1970 Act.

■ In an analogous situation, the Supreme Court has rejected the contention that an administrative agency's determination that a judicial proceeding should be instituted must be preceded by hearing and notice. In Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1950), the Court, holding that due process did not require notice and a hearing prior to an administrator's finding of "probable cause" which permitted seizure of misbranded articles under the Federal Food, Drug and Cosmetic Act, stated:

> "We have repeatedly held that no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective.
>
>     \*   \*   \*
>
> It is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." 339 U.S. at 598–99.

Under the 1970 Act, we hold that due process is satisfied as long as the district court, after providing the broker-dealer with an opportunity to be heard, makes its own determination that the broker-dealer has failed or is in danger of failing to meet its obligations to its customers. Further, we conclude that, consonant with the requirements of due process, such a determination must result from a *de novo* proceeding in the district court rather than from some lesser process merely involving judicial review of the initial administrative determination.[8]

---

7. Hughes, Inc. is a member of SIPC by virtue of its being a broker-dealer registered with the SEC. See § 3(a)(2)(A) of the 1970 Act, 15 U.S.C. § 78ccc (a)(2)(A)(1970), which provides, with some inapplicable exceptions, that all persons registered as brokers or dealers under § 15(b) of the 1934 Act are members of SIPC.

8. The statutory procedure upheld in Ewing v. Mytinger & Casselberry, Inc.,

■ Appellants argue, however, that § 5(b) (1) of the 1970 Act precludes a district court from making its own finding as to whether a broker-dealer is in danger of failing to meet its obligations to its customers. Under § 5(b) (1) (A), the district court to which SIPC applies "shall grant the application and issue a decree adjudicating that customers of the member named in the application are in need of protection under this [Act]" if it finds that one or more of the conditions set forth in § 5(b) (1) (A) exists. Appellants point out that a literal reading of this section may be said to require a district court to grant SIPC's application if one of the five enumerated conditions is present, even though the broker-dealer is not in danger of failing to meet its obligations to its customers. Such a literal reading of course would raise a most serious question as to the statute's constitutionality. So read, it would provide for no hearing and no judicial determination of the broker-dealer's ability to meet its obligations. Cf. Ewing v. Mytinger & Casselberry, Inc., *supra,* 339 U.S. at 598–99. There is no need, however, for us to decide whether such a literal interpretation would violate due process. It is a cardinal principle of statutory construction that "[w]hen . . . a serious doubt of constitutionality is raised, . . . this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 285 U.S. 22, 62 (1932); *accord,* Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344, 348 (2 Cir. 1970); United States v. Witkovich, 353 U.S. 194, 201–02 (1957).

■ We believe that the 1970 Act reasonably can be construed to avoid possible constitutional infirmity. As Learned Hand said in his much quoted observation, "[t]here is no surer way to misread any document than to read it literally." Guiseppi v. Walling, 144 F.2d 608, 624 (2 Cir. 1944) (concurring opinion), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244 (1945); *accord,* Diskin v. Lomasney & Co., 452 F.2d 871, 874 (2 Cir. 1971). Here the most reasonable construction is that SIPC's initial determination under § 5(a) (2) is subject to judicial determination—after notice, hearing and appropriate findings —by the district court under § 5(b). See Note, 24 Vand.L.Rev. 586, 610 (1971). This interpretation of the statute is buttressed by the legislative history indicating that the primary purpose of the 1970 Act is the protection of customers of financially disabled broker-dealers; the Act does not contemplate action by SIPC unless there is a danger that the broker-dealer may not meet its obligations to its customers.[9] The literal interpretation of the statute which appellants urge upon us could result in the district court's appointing a trustee when one of the five conditions

---

*supra,* 339 U.S. at 598 and n. 5, granted the owner of seized articles "an opportunity to have a full hearing before the court." Although some authority arguably suggests that a *de novo* judicial proceeding is not necessary to cure the absence of an initial administrative hearing, see 1 Davis, Administrative Law Treatise § 7.10, at 449–50 (1958), the guiding principle must be Mr. Justice Jackson's statement in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950), that one of the minima of due process is the "opportunity for hearing appropriate to the nature of the case." Determination whether a member of SIPC has failed or is in danger of failing to meet its obligations to its customers involves the resolution of difficult and complex factual issues. In such circumstances, "an opportunity to confront and cross-examine adverse witnesses" is almost always required. Goldberg v. Kelly, 397 U.S. 254 (1970). We are unaware of any exigencies or practical problems of administration that might justify any less stringent view of what must be done in the district court proceeding under the 1970 Act.

9. H.R.Rep.No.91–1613, 91st Cong., 2d Sess. 2 (1970); S.Rep.No.91–1218, 91st Cong., 2d Sess. 3–4 (1970). On legislative history generally, see 3 U.S. Code, Cong. & Admin.News 5254–5285 (1970). See also Note, 24 Vand.L. Rev. 586 (1971).

in § 5(b) (1) (A) exists, even though the broker-dealer is not in danger of failing to meet its obligations. It also is significant that SIPC consistently has interpreted § 5(b) to mean that the district court should review the validity of SIPC's determination under § 5(a)(2). We hold that the statutory scheme whereby customers of a broker-dealer are adjudicated to be in need of the 1970 Act's protection is consistent with due process.

### III:

■ Appellants further contend that the appointment of a trustee in this case violated their right to due process, as the district court never afforded appellants a *de novo* hearing on the question of the ability of Hughes, Inc. to meets its obligations to its customers. This claim is not supported by the record.

The hearing before Chief Judge Foley on January 17, 1972 provided appellants with ample opportunity to present such evidence regarding Hughes, Inc. if they had wanted to do so. During that hearing, in response to the court's question about appellants' claim that they had been denied a hearing on SIPC's determination under § 5(a)(2), counsel for SIPC replied:

> " . . . I would assume that the hearing which is being held in this Court today gives the defendant all the opportunity in the world to show whatever he feels is appropriate."

Moreover, in appointing the trustee under the 1970 Act, the court did not rely solely upon oral statements made during the hearing on January 17. Rather, the court relied upon all the evidence which had been accumulating from the time the SEC initially commenced the action in August 1971. Appellants were accorded due process at the hearings which the court had conducted prior to the appointments of the Special Fiscal Agent and the receiver, where the court had provided appellants with full opportunity to rebut the evidence and claims of the SEC and the findings of the Special Fiscal Agent. We hold that the court correctly concluded at the hearing on January 17 that appellants had had "due process not only in this situation today, but . . . in the hearings we held and the opinion I wrote."

■ Appellants argue, however, that the court did not realize that it was obligated to make its own finding with respect to the validity of SIPC's determination under § 5(a)(2). This claim also is not supported by the record.

Contrary to appellants' assertions, counsel for SIPC conceded at the hearing on January 17 that the court should make its own finding about the ability of Hughes, Inc. to meet its obligations to its customers:

> "I suppose that the key, and I think the key throughout this whole proceeding, Your Honor, is the fact that the Act is designed to protect the public customers of the firm. If these conditions are present, *and* if there is a danger of failure to meet the firm's obligations to those customers, I would submit that the Court would probably be well advised to appoint the trustee so that the protection provided by the 1970 Act could be made available to the customers." (Emphasis added)

That Chief Judge Foley accepted counsel's interpretation and recognized his responsibility under § 5(b) (1) is shown by his permitting appellants' counsel to argue that the evidence failed to show any danger that Hughes, Inc. would fail to meet its obligations to its customers. For example, at one point during the hearing on January 17, appellants' counsel argued:

> "Neither do I believe in the record anywhere is there an indication of real danger to the customers."

Rather than responding that this was irrelevant to the issue of whether the court should appoint a trustee under § 5(b) (1) and (3), Chief Judge Foley replied:

> "What about that report of the Receiver that was so fundamental in pointing out the dangers?"

Furthermore, as will be discussed below, the court specifically found that Hughes, Inc. was in danger of failing to meet its obligations to its customers. It is unlikely that the court would have made this finding unless it had believed that it was a prerequisite to its adjudicating the customers to be in need of protection provided by the 1970 Act. We are satisfied that Chief Judge Foley recognized his responsibility to examine the validity of SIPC's initial determination under § 5(a) (2).

█ We likewise reject appellants' argument that the court never actually made a finding that Hughes, Inc. was in danger of failing to meet its obligations to its customers. This argument overlooks the fact that the court, in its order appointing the trustee under the 1970 Act, specifically stated that "the customers of Alan F. Hughes, Inc., are in need of the protection afforded by the Securities Investor Protection Act of 1970 . . . ." In view of our interpretation of § 5(b)(1), we believe that implicit in this statement is the court's finding that Hughes, Inc. had failed or was in danger of failing to meet its obligations to its customers. Moreover, while his remarks from the bench on January 17 are not conclusive, we believe that the following suffices to show that Chief Judge Foley made the requisite determination that Hughes, Inc. was in danger of failing to meet its obligations to its customers:

"So I think in my judgment, and I am going to sign an order to that effect, there is more than a reasonable showing that this application should be granted. *There is clear present danger.* There is an imminence now that has continued maybe too long in a situation that needed correction earlier." (Emphasis added)

█ Appellants' further argument that there was insufficient evidence to support this finding clearly is without merit. The report of the Special Fiscal Agent documented the finding of danger that Hughes, Inc. would not meet its obligations to its customers. Such danger was most apparent in the case of Westgate North, Inc., a customer of Hughes, Inc. When Westgate gave Hughes $100,-000 for the purchase of securities, Hughes diverted the money to his own personal use for several months. Moreover, when the securities ultimately were purchased for Westgate, some of them were unlawfully hypothecated by Hughes. As of January 17, 1972, Westgate still was unable to obtain possession of some of its securities, because they were pledged as security for unpaid loans of Hughes. Furthermore, on January 17, the receiver reported to the court that Hughes also had unlawfully hypothecated the securities of other customers. The report of the Special Fiscal Agent also advised the court that Hughes, Inc. had engaged in practices which reflected on its integrity as a broker. Finally, the Special Fiscal Agent reported that the records of Hughes, Inc. were too misleading and inaccurate to be of any value in determining whether Hughes, Inc. had violated the federal securities laws. In view of the fact that SIPC had only to show that there was a danger that Hughes, Inc. would fail to meet its obligations, not that it had actually done so, we find appellants' contention that SIPC failed to make the requisite showing to be utterly without merit.

In addition to determining that Hughes, Inc. was in danger of failing to meet its obligations to its customers, the court also correctly found that two of the conditions set forth in § 5(b)(1)(A) existed. Specifically, the court found that Hughes, Inc. "is unable to make such computations as may be necessary to establish compliance with such financial responsibility or hypothecation rules or regulations." § 5(b)(1)(A)(v), 15 U.S.C. § 78eee(b)(1)(A)(v) (1970). This finding was supported by the Special Fiscal Agent's report, which concluded that "defendant's books and records are so unreliable, inaccurate, incomplete and misleading that they are unusable." The Special Fiscal Agent's report was corroborated by a letter from

the accounting firm of Charles L. Marvin and Company, whom the Special Fiscal Agent had hired to audit the books and records of Hughes, Inc. Furthermore, in his Memorandum-Decision and Order of December 13, 1971, Chief Judge Foley adopted the findings and conclusions of the Special Fiscal Agent and stated that:

"The bookkeeping rule violation I find is so obviously violated that it seems wasteful use of words to elaborate further about it. In fact there is support from many sources, including accountants and bookkeeper of defendants, that the records required by SEC rule to be kept were so inaccurate and incomplete as to make practically impossible an orderly and satisfactory ascertainment of defendant's security dealings. The individual defendant practically admits this feature of the charges and the record so indicates. I find the bookkeeping rule violated."

While the appointment of the trustee is sustainable on the basis of a finding of the existence of one of the conditions enumerated under § 5(b)(1)(A), the court also correctly found that Hughes, Inc. was "the subject of a proceeding pending in any court . . . in which a receiver . . . for such member has been appointed." § 5(b)(1)(A)(iii), 15 U.S.C. § 78eee(b)(1)(A)(iii) (1970). In his order of December 13, 1971, Chief Judge Foley himself appointed a receiver for Hughes, Inc.

## IV.

Finally, while appellants have challenged the appointment of the receiver, we hold that the SEC presented ample evidence to support its claim that the appointment of a receiver was necessary to protect public investors.

The report of the Special Fiscal Agent demonstrated the chaotic state of the books and records of Hughes, Inc., appellants' unlawful hypothecation of customers' securities, appellant Hughes' apparent diversion of a customer's funds to his own account and other apparently fraudulent activities which jeopardized the interests of the broker-dealer's customers. Under the circumstances, the court was justified in concluding that to permit Hughes to continue in control of the company would endanger the interests of the broker-dealer's customers. Similar to the situation in SEC v. Charles Plohn & Co., 433 F.2d 376, 379 (2 Cir. 1970), "a receivership [was] apparently the only remedy that [would] adequately protect the property of defendant's customers." Moreover, contrary to appellants' claim, this was not a case where the only purpose of the receivership was to bring about a quick liquidation. Cf. SEC v. S&P National Corp., 360 F.2d 741, 750 (2 Cir. 1966); Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141, 143 (2 Cir. 1964). Indeed, the court's order appointing the receiver demonstrates that the receivership was intended primarily as a means of conserving corporate assets while SIPC made its determination whether the customers of Hughes, Inc. were in need of the protection afforded by the 1970 Act. The court ordered the receiver to liquidate only "if necessary". Thus, as in SEC v. S&P National Corp., supra, 360 F.2d at 750–51, "the primary purpose of the appointment was promptly to install a responsible officer of the court who could . . . 'ascertain the true state of affairs . . . and report thereon' to the court . . . and preserve the corporate assets." Accord, SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1105 (2 Cir. 1972).

We are not inclined to find an abuse of discretion on the part of a district judge who appointed a receiver only after careful study of a comprehensive report prepared by the court's Special Fiscal Agent on the need for a receivership. Chief Judge Foley's careful handling of the receivership application was commendable; it reflects the perception and good judgment of a district judge with long experience in an area of the administration of federal justice which often is

fraught with problems of unusual difficulty and sensitivity.

Here justice was done and done well.

Affirmed.