481 F.2d 401
 Fed. Sec. L. Rep. P 94,068
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
Securities Investor Protection Corporation, Applicant-Appellee,
v.
ALAN F. HUGHES, INC. and Alan F. Hughes, Defendants-Appellants.
 No. 636, Docket 72-2166.
 United States Court of Appeals,
Second Circuit.
 Argued May 29, 1973.
Decided June 21, 1973.
 
 John Barry Donohue, Jr., Washington, D. C. (Shipley, Akerman, Stein & Kaps, Washington, D. C., on the brief), for defendants-appellants.
 Wilfred R. Caron, Associate Gen. Counsel, Washington, D. C. (Theodore H. Focht, Gen. Counsel, Francis L. Carter, Washington, D. C., on the brief), for appellee Securities Investor Protection Corp.
 Winthrop J. Allegaert, New York City, for Trustee.
 Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 In August 1971, the Securities and Exchange Commission (SEC) filed a complaint in the United States District Court for the Northern District of New York alleging that Alan F. Hughes, Inc., a registered broker-dealer, aided and abetted by its president, Alan F. Hughes, had violated various provisions of the Securities Exchange Act of 1934. The complaint sought an injunction and appointment of a receiver. This relief was granted. Thereafter, the Securities Investor Protection Corporation (SIPC) determined that Hughes, Inc. was in danger of failing to meet its obligations to its customers and that there existed one or more of the conditions specified by section 5(b)(1)(A) of the Securities Investor Protection Act of 1970 (the 1970 Act), 15 U.S.C. Sec. 78eee(b)(1)(A). In January 1972, Chief Judge James T. Foley, agreeing with SIPC's conclusions, granted its application for appointment of a trustee for liquidation of Hughes, Inc. under the 1970 Act.[1] The application by SIPC was hotly contested both in the district court and on appeal to this court on a number of grounds. The decision of this court, with which familiarity will be assumed, was the first to interpret the 1970 Act in a number of important respects. SEC v. Alan F. Hughes, Inc., 461 F.2d 974 (2d Cir. 1972). Among other things, we held that a broker-dealer resisting an application by SIPC for liquidation is entitled to a de novo judicial determination that "the broker-dealer has failed or is in danger of failing to meet its obligations to its customers." 461 F.2d at 979.
 
 
 2
 So much is prologue to this proceeding, in which counsel for defendants in the prior litigation claim that for their services in resisting the SIPC application they are entitled to attorneys fees[2] as a matter of first priority from the estate of Hughes, Inc. or from SIPC funds, or from both. Their fee application was denied by Judge Foley on the ground that there was no legal basis for allowing such a fee,[3] and this appeal followed. Appellants argue that the 1970 Act and the Bankruptcy Act both authorize the compensation requested and that failure to so construe these Acts denies due process of law to those against whom SIPC proceeds, and is arbitrary, capricious and a denial of the equal protection of the laws.
 
 The 1970 Act
 
 3
 In pressing their claim for compensation, appellants rely upon subsection 6(f)(2) of the 1970 Act, 15 U.S.C. Sec. 78fff(f)(2), which provides that in addition to advancing funds for claims of customers against the broker-dealer being liquidated, "SIPC may advance to the trustee such moneys as may be required to effectuate subsection (b)(1)(A) of this section." Subsection 6(b)(1)(A) sets forth the powers of a trustee under the 1970 Act, which include the power, with SIPC approval, to
 
 
 4
 hire and fix the compensation of all personnel . . . and other persons (including but not limited to accountants) that are deemed by such trustee necessary for all or any purposes of the liquidation proceeding. . . . [Emphasis added.]
 
 
 5
 Appellants argue that since this court held in its prior opinion that a de novo judicial hearing is an integral aspect of an SIPC liquidation proceeding, one of the "purposes" of that proceeding must be to give a broker-dealer a chance to show that the claims against it are insufficient or incorrect. For legal services in that endeavor, they claim, the 1970 Act thus clearly authorizes compensation. However, this argument confuses a defendant's rights at an SIPC hearing with the congressionally-defined powers of an SIPC trustee. Section 6(a) of the 1970 Act, 15 U.S.C. Sec. 78fff(a), enumerates the "purposes of the liquidation proceeding" to which subsection 6 (b)(1)(A) refers. These are to return specifically identifiable property to the debtor's customers, to pay customers, to operate the debtor's business in order to complete open contractual commitments, to enforce rights of subrogation, and to liquidate the debtor's business. The legal services in question do not fit into any of these categories. Appellants' argument in its simplest form is that resisting liquidation is a purpose of the liquidation proceeding. While Congress could so provide we do not believe that it has.
 
 
 6
 Appellants also argue that unless we accept their construction of the 1970 Act, respondents to SIPC liquidation applications will be unconstitutionally deprived of the assistance of counsel. Appellants point out that the SEC and SIPC frequently act in tandem to tie up a firm's assets pending judicial determination of the application for a trusteeship and liquidation,[4] and argue that counsel will not undertake a defense without assurance of subsequent payment. Defendants obviously suffered no deprivation of legal services here, and the same willingness of attorneys to represent a debtor resisting involuntary proceedings under the Bankruptcy Act is a frequent phenomenon. Quite apart from the observation that we do not understand the law to be that, as a general matter, the Constitution requires the appointment of counsel for litigants in civil cases,[5] the analogy to the Bankruptcy Act is compelling. We have long held that legal services in resisting a bankruptcy petition are not compensable under that Act, see, e. g., In re Evenod Perfumer, Inc., 67 F.2d 878 (2d Cir. 1933), cert. denied, 291 U.S. 671, 54 S.Ct. 455, 78 L.Ed. 1060 (1934), and it has not been seriously doubted that this interpretation is constitutional. Moreover, if the Constitution does not require exemption from a filing fee for an indigent who seeks to take advantage of the bankruptcy laws, see United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), it surely does not require that a brokerage firm resisting an application under SIPC be entitled to have its attorneys paid out of the estate.
 
 The Bankruptcy Act
 
 7
 Appellants also rely upon sections 60d and 64a of the Bankruptcy Act, 11 U.S.C. Secs. 96(d), 104(a), both of which, under section 6(c)(1) of the 1970 Act, 15 U.S.C. Sec. 78fff(c)(1), apply to SIPC liquidations. Section 64a gives a first priority claim against the estate of the debtor for
 
 
 8
 one reasonable attorney's fee . . . irrespective of the number of attorneys employed, to the bankrupt in voluntary and involuntary cases . . . in such amount as the court may allow.
 
 
 9
 Appellants concede that the cases take a narrow view of the protection offered attorneys' fees by section 64, limiting compensation to services that "aid in the administration of the estate." Despite the authority that resisting a bankruptcy application does not so "aid" the estate, see In re Evenod Perfumer, Inc., supra; 3A Collier on Bankruptcy p 62.31 (14th ed. 1972), appellants argue that in the context of an SIPC liquidation the section should be construed differently to allow compensation for such services. The reasons given for distinguishing the two situations are that an SIPC proceeding is initiated by a public, not a private, body; that the proceeding may commence even though the broker-dealer may be solvent; and that allowing such attorneys' fees could greatly reduce the amount available for creditors in a straight bankruptcy proceeding, but would not affect the moneys going to broker-dealer customers in an SIPC proceeding.
 
 
 10
 The first of these arguments is, in this context, a distinction without a difference. The second is no distinction at all, since a creditor petitioning in bankruptcy and SIPC seeking a liquidation may each err in their allegations. Perhaps appellants' point is that SIPC may base a petition upon "technical" violations, such as bookkeeping deficiencies or an inability to meet net capital requirements,[6] whereas a creditor in straight bankruptcy must allege something more substantial. The two-fold answer is that "technical" violations under the 1970 Act are frequently most significant, and, in any event, an SIPC liquidation cannot be ordered unless the court finds that the broker-dealer has failed or is in danger of failing to meet its obligations to its customers, surely not just a "technical" matter. The final point is the only one that gives pause at all-although not for long. It may be true that allowing fees to the attorneys for defendants in an SIPC proceeding would not reduce the fund available for most broker-dealer customers.[7] But it still does not follow that when incorporating section 64a into the 1970 Act "[e]xcept as inconsistent with the provisions of" the Act, 15 U.S.C. Sec. 78fff(c)(1), Congress intended to exclude well-settled judicial interpretations of that section.
 
 
 11
 Appellants' argument based upon section 60d of the Bankruptcy Act requires little discussion. That provision, reproduced in relevant part in the margin,[8] is not a grant of authority to pay counsel fees, as appellants suggest, but rather a vehicle for protecting estates against payment by a debtor of an excessive legal fee; the section permits attorneys to retain compensation only to the extent of reasonable value of services rendered before the filing of a bankruptcy petition and is not authority for allowance of fees for services after filing. See 3 Collier on Bankruptcy p 60.68, at 1143 (14th ed. 1971). On this view there is no basis for appellants' claim that the section authorizes payment of counsel fees for work done after the filing of the petition and that it is therefore arbitrary to treat such services differently, depending on whether the fee is paid before or after the filing. In any event such distinctions based upon arbitrary dates abound in the Bankruptcy Act,[9] and they are not unconstitutional.
 
 
 12
 Judgment affirmed.
 
 
 
 [1]
 Section 5(b)(3) of the 1970 Act, 15 U.S.C. Sec. 78eee(b)(3)
 
 
 [2]
 The attorneys are seeking $7,117.26 in unpaid fees and expenses
 
 
 [3]
 Judge Foley, however, did allow counsel to retain payments of $2,118.86 previously received from defendants for legal fees and expenses, and granted counsel's application to be relieved except to pursue this appeal
 
 
 [4]
 SIPC First Annual Report, 1971, pp. 22-23
 
 
 [5]
 See, e. g., Peterson v. Nadler, 452 F.2d 754, 757 (8th Cir. 1971) (per curiam); Bethea v. Crouse, 417 F.2d 504, 505 (10th Cir. 1969); cf. United States ex rel. Gordon v. Reincke, 415 F.2d 1126, 1128 (2d Cir. 1969) (per curiam). But see Note, The Right to Counsel in Civil Litigation, 66 Colum.L.Rev. 1322 (1966). We do of course recognize that a federal district judge is given discretion to appoint counsel in civil cases pursuant to the salutary provisions of 28 U.S.C. Sec. 1915(d)
 
 
 [6]
 See 15 U.S.C. Sec. 78eee(b)(1)(A)
 
 
 [7]
 Customers of a broker-dealer with claims outstanding are entitled to share ratably in the "single and separate fund," composed of property held by the firm for customer accounts but not identified to a specific customer (specifically identifiable property is returned to the customer if he is entitled to it). 15 U.S.C. Secs. 78fff(c)(2)(B), (C). SIPC is authorized to advance to the trustee funds for payment of customer claims up to $50,000 per account, except that no more than $20,000 per account will be advanced to cover claims for cash. 15 U.S.C. Sec. 78fff(f)(1). If a customer's claim is still not fully satisfied, he can share in the general estate of the firm with the general creditors. Thus, unless a customer, because of his firm's inability to meet its obligations, faces a loss greater than the maximum coverage provided by SIPC, there is no likelihood that payment of a priority claim to the firm's attorneys will reduce the customer's recovery. It should be noted, however, that while most customers are thus fully protected, a minority of large investors could face substantial losses in spite of SIPC's coverage. See Sowards & Mofsky, The Securities Investor Protection Act of 1970, 26 Bus.Law. 1271, 1283-84 n. 60 (1971). Further more, to the extent that a priority claim for attorneys' fees would reduce the general estate, the rights of general creditors would be adversely affected. For an evaluation of the early performance of SIPC, see Note, The Securities Investor Protection Act of 1970: An Early Assessment, 73 Colum.L.Rev. 802 (1973)
 
 
 [8]
 If a debtor shall . . ., in contemplation of the filing of a petition . . ., pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate
 If, whether before or after filing, a debtor shall agree orally or in writing to pay money or transfer property to an attorney at law after the filing, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the bankrupt made prior to discharge and shall be held valid only to the extent of a reasonable amount . . ., and any excess obligation shall be cancelled, or . . . returned to the bankrupt.
 
 
 [9]
 E. g., 11 U.S.C. Sec. 96(a)(1) (preference is transfer "to or for the benefit of a creditor . . . within four months before the filing" of bankruptcy petition)