SECURITIES & EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

CAPITAL COUNSELLORS, INC., et
al., Defendants.

CONBOY, HEWITT, O'BRIEN &
BOARDMAN, Appellant,

v.

Sydney B. WERTHEIMER,
Receiver-Appellee.

No. 404, Docket 74–2023.

United States Court of Appeals,
Second Circuit.

Argued Jan. 15, 1975.

Decided March 3, 1975.

Hobart L. Brinsmade, Conboy, Hewitt, O'Brien & Boardman, and David J. Mountan, Jr., New York City, for appellant pro se.

Leon Leighton, New York City, for receiver-appellee.

Walter P. North, Senior Asst. Gen. Counsel, and Frederick L. White, S. E. C., for plaintiff-appellee.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

FRIENDLY, Circuit Judge:

This is an appeal from an order of Judge Cooper of the District Court for the Southern District of New York, denying the application of a law firm, Conboy, Hewitt, O'Brien & Boardman (Conboy, Hewitt), for payment of $20,000 in legal fees for services rendered Capital Counsellors, Inc., a broker-dealer, and Capital Advisors, Inc., an investment adviser, both registered with the Securities and Exchange Commission (SEC). Con-

boy, Hewitt also asked that its claim be granted a preference out of the assets of the two corporations as an administration expense.

The services in question were rendered between March 25, 1971, and June 17, 1971, in connection with the unsuccessful efforts of the corporate defendants and the individual defendants, J. Irving Weiss, president and director of Capital Counsellors, and his brother, Abraham B. Weiss, vice-president and director of both Capital Counsellors and Capital Advisors, in resisting legal action by the SEC in connection with alleged securities violations. In December 1970, the SEC undertook an investigation to determine whether the corporate defendants had committed any violations of securities laws. Conboy, Hewitt were retained to represent the defendants during the course of the investigation and any subsequent proceedings. Based upon this investigation, the SEC filed a complaint in the Southern District on March 25, 1971,[1] alleging a number of violations, by both the corporate and the individual defendants, of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisors Act of 1940, and rules and regulations thereunder. The complaint asked for an injunction to prevent the defendants from engaging in the marketing of securities and for the appointment of a receiver. Defendants through their counsel, Conboy, Hewitt, vigorously opposed the requests. On the same date, March 25, Judge Cannella entered a temporary restraining order which, *inter alia,* froze corporate defendants' assets and restrained the defendants "from . . . creating any contractual commitment of or in behalf of . . . [the corporate defendants], except as may be directed or approved by any receiver or trustee appointed herein." On April 2, this TRO was modified and continued by consent in an order by Judge Cooper to permit the corporate

---

1. The law firm's claim for services rendered prior to this date is not in dispute. A claim of $2,098 for 59¾ hours of pre-litigation legal services has been allowed as a general claim, for which appellants are expected to receive a distribution of $41.07 out of the receivership estate.

defendants to continue operations on a limited basis. It provided in part:

> The corporate defendants may retain and pay such employees as they deem necessary and disburse such funds as they deem necessary for office and other expenses provided that all expenses so incurred shall be paid for in full by the corporate defendants and shall in no way impair any funds owing to any public customers. All expenses herein shall be indemnified by deposits in the Indemnity Fund [elsewhere described in the order as the "Indemnity Account"] by the individual defendants J. Irving Weiss and Abraham B. Weiss.

The order provided that the Indemnity Account was to be established as follows:

> An escrow account entitled "Customer Indemnity Account" ("Indemnity Account") shall be established by the individual defendants J. Irving Weiss and Abraham B. Weiss for the benefit of all customers of the corporate defendants; funds deposited in the Indemnity Account under the circumstances herein described shall be obtained exclusively from the personal assets of the individual defendants . . . and shall be used to indemnify the customers of the corporate defendants from any depletion of their securities, free credit balances and other assets in the hands of the defendants[,] their officers, directors, agents, servants, employees, attorneys, successors and assigns . . ..

The individual defendants were required to fund the Indemnity Account initially with $7,000. Thereafter "[e]ach succeeding required deposit shall be made prior to or simultaneous with the related expense item."

Another order of May 7 further modifying and extending the TRO, again by consent, deleted the above quoted provision that "office and other expenses" shall be indemnified by deposits in the Indemnity Fund and substituted the following:

> The corporate defendants may retain and pay such employees as they deem necessary, and disburse such funds as they deem necessary for office and other expenses, all provided, however, that (i) no such defendant may incur any expense, or make any disbursement, unless for an activity herein permitted to be conducted by it and in accordance with the conditions and limitations, if any, upon such activity herein contained. . . .

The order specified certain activities in which defendants were permitted to engage, but defendants were not expressly authorized to employ attorneys in connection with the SEC's complaint and they never sought approval of their retention of appellants from the fiscal agent, who was appointed by the court to exercise wide-ranging power over the assets and operations of the corporate defendants, including power over the employment of personnel. The TRO as modified remained in effect until Sydney B. Wertheimer, the fiscal agent, was appointed receiver in Judge Cooper's order of June 17, as was well known by appellants, who participated in the negotiations leading to the two modifications permitting interim operation of some of the corporate defendants' activities. In his opinion of June 11, granting the SEC's application for a preliminary injunction and for appointment of a receiver to administer the corporate defendants' assets, Judge Cooper found that the SEC had made a sufficient showing that defendants had engaged in the offer and sale of unregistered securities and in doing so had "failed to truthfully inform investors of the true costs and substantial risks" involved and had "failed to deal fairly and honestly with their customers," thereby violating §§ 5(a)&(c) and 17(a) of the Securities Act, § 10(b) of the Securities Exchange Act, and Rule 10b–5. SEC v. Capital Counsellors, Inc., 332 F.Supp. 291 (S.D.N.Y.1971).

Appellants applied for the granting of attorneys' fees on a preferred basis on October 25, 1971. In an opinion of May 22, 1974, Judge Cooper denied the application in all respects. He found that he could resolve the issue presented to him

"by the application of the reasoning in a recent decision" in this circuit, SEC v. Alan F. Hughes, Inc., 481 F.2d 401 (2 Cir.), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). In that case attorneys for defendant, a registered broker-dealer charged by the SEC with violating provisions of the Securities Exchange Act of 1934, sought to recover, as a first priority, their claim for attorneys' fees in assisting defendant in its unsuccessful effort to resist appointment of a trustee for liquidation under § 5(b)(3) of the Securities Investor Protection Act of 1970, 15 U.S.C. § 78eee(b)(3). Besides noting that the attorneys' claim did not conform with the compensation standards of any provision of the Securities Investor Protection Act, we dismissed appellants' constitutional claims and noted in any event that "the analogy to the Bankruptcy Act is compelling." *Id.* 481 F.2d at 403. Legal services in resisting a bankruptcy petition are not compensable under that Act. *See, e. g.,* Randolph v. Scruggs, 190 U.S. 533, 539, 23 S.Ct. 710, 47 L.Ed. 1165 (1903); In re Evenrod Perfumer, Inc., 67 F.2d 878 (2 Cir. 1933), cert. denied sub nom. Mintz v. Irving Trust Co., 291 U.S. 671, 54 S.Ct. 455, 78 L.Ed. 1060 (1934); In re Garrett Road Corp., 256 F.Supp. 709, 713 (E.D.Pa. 1966). Acknowledging that *Hughes* involved an interpretation of the Securities Investor Protection Act, § 6(c)(1) of which we held to have incorporated § 64(a) of the Bankruptcy Act, 481 F.2d at 403, the court below nevertheless found the reasoning of *Hughes* "equally applicable" to the case before it. Indeed, the court considered this reasoning to be *a fortiori* applicable since, while bankruptcy may be the fate of an individual who simply handles his financial affairs ineptly or is the victim of misfortune, defendants here perpetrated a fraud on investors.

The court therefore refused to permit defendants "to impose the burden of defending themselves upon customers and other creditors who have already suffered losses in excess of 4 million dollars." It acknowledged that "where prosecution or defense of an action under the federal securities laws has been in furtherance of the purpose of those laws—protection of the public investor— then the parties bearing the costs of such prosecution or defense are entitled to reimbursement." In the instant case, however, it found that "defendants' opposition to the SEC application in no way furthered the interests of their public investors." It also acknowledged that "the professional services rendered were of high order and deserving of the legal fees requested," but it found no reason to transfer the burden for payment to the customers when appellants had failed to obtain adequate assurance of payment other than through a successful defense of the action.

Conboy, Hewitt insist that the historical practice of the courts has been to award counsel fees, in the proper exercise of discretion, for services rendered in opposing the appointment of a receiver. They call our attention to a number of older cases, including Robinson v. Mutual Reserve Life Ins. Co., 175 F. 624 (C.C.S.D.N.Y.1909), 182 F. 850 (C.C.S.D. N.Y.1910), aff'd, 189 F. 347 (2 Cir. 1911); Barnes v. Newcomb, 89 N.Y. 108 (1882); and People v. Commercial Alliance Life Ins. Co., 148 N.Y. 563, 42 N.E. 1044 (1896). They also suggest that the bankruptcy analogy and the reasoning in *Hughes* are inapposite since both are based upon statute, whereas the equity receivership has evolved over the years as an equitable remedy, governed by rules of fairness which may be more generous than those enacted by Congress for bankruptcy proceedings or required by the Constitution.

The appellees, on the other hand, suggest that the cases cited by appellants may be distinguished in that the decisions made clear that counsel fees would not be awarded for resisting appointment of a receiver where corporate officers had resorted to fraudulent statements or devices, as here, in order to enable the corporation to continue its activities but rather where the sole issue was that of solvency—a situation · in which the interests of creditors might be

better served by avoiding the expense of a receivership.

 In affirming the judge's ruling, we find it unnecessary to engage in a close textual analysis of the early cases or a detailed examination of the fraud in this case. It is perfectly clear that the award of attorneys' fees in a case such as this is entrusted to the sound discretion of the district judge, and we are unable to find that Judge Cooper abused this. Appellants do not deny that decision on the award of fees rests in the district judge's discretion and the cases they cite bear this out. Barnes v. Newcomb, *supra,* 89 N.Y. at 115; People v. Commercial Alliance Life Ins. Co., *supra,* 148 N.Y. at 565; Robinson v. Mutual Reserve Life Ins. Co., *supra,* 175 F. at 627. See 2 Clark, Law of Receivers § 642(b), at 1107 (1959). Defendant's attorneys' fees in receivership proceedings are not typically allowed. As said in 2 Tardy, Smith on Receivers § 639, at 1779 (2d ed. 1920):

> Ordinarily the services of an attorney employed by defendant to represent him in the receivership proceedings are solely for his benefit and are not to be paid for out of funds brought into court for the benefit of plaintiff and other claimants against the defendant.

While these words are over fifty years old and recent authority is relatively sparse in view of increased resort to the amendments to the Bankruptcy Act starting in the early 1930's, they remain appropriate for application today. See Barker v. Southern Building & Loan Ass'n, 181 F. 636 (C.C.N.D.Ala.1910).[2]

Cf. Culhane v. Anderson, 17 F.2d 559, 560 (8 Cir. 1927); In re McMillan, Rapp & Co., 36 F.Supp. 663, 664 (E.D.Pa.1941). There must be some showing that "some material benefit accrued to an estate in receivership through the services of those not entrusted with its administration," *id.* at 664; see Glenn, The Rights and Remedies of Creditors Respecting Their Debtor's Property § 479, at 382 (1915); cf. Culhane v. Anderson, *supra,* 17 F.2d at 560, and the burden of demonstrating benefit to the receivership estate lies on those who assert a claim for counsel fees against it. Barker v. Southern Building & Loan Ass'n, *supra,* 181 F. at 638 ("There would be nothing in the circumstances named to require a departure from the general rule that each client should compensate his own solicitor. There is no allegation of fact in the petition showing that the petitioners performed any service that increased or protected the fund that they seek to charge, nor is it alleged that they performed any service that brought the fund into the court."). Appellants have not demonstrated that their efforts had such a beneficial effect. Rather they seem to suggest only that *their* services were not "captious, delaying, interposed in bad faith, or unnecessary" and that *they* were not connected with any fraudulent conduct on the part of defendants. This, however, is not enough. We are wholly unable to say that, in weighing the interests of the creditors and the deserts of appellants and concluding that the opposition to the SEC's application for a receiver "in no way furthered the interests of" the public investors, the district court abused its discretion.

2. In this case the court said, 181 F. at 637–38:

The contention of petitioners may be conceded, that the president or stockholders may be permitted to intervene and seek to vacate the order appointing the receiver, or seek to have him removed and another receiver appointed; but this is far from holding that they may do so at the expense of the fund held in court. In such a case, those employing counsel should themselves bear the expense. . . . The claim is dependent solely, on the facts as presented, on the theory that the president of the corporation, after the appointment of a receiver and after the assets are in the receiver's hands by a decree enjoining the officers of the corporation from further control, can make a contract with attorneys to resist the court's actions, and by such contract fasten a lien on the corporation's assets. I cannot sustain that view.

Since at the time the services here in question were performed the court had appointed a fiscal agent who was empowered to act much as a temporary receiver would and had issued a TRO restraining the acts of defendants, the case is quite close.

Indeed, appellant's principal contention is not that a denial of their claim was an abuse of discretion but that Judge Cooper failed to exercise discretion at all because of a view that he lacked power to grant their application in light of the *Hughes* case. We are unable to agree. While the court did say that the issue before it "is resolved by" its view of the *Hughes* case, which may have been somewhat of an overstatement, it also said repeatedly that it was applying the reasoning of the case, not its holding, for it recognized that *Hughes* was in a different, if analogous, field and involved statutory interpretation. Moreover, in announcing its holding, the court sufficiently evinced an understanding that it had discretion in deciding the question of awarding counsels' fees: "After careful consideration of movant's claim and of the nature and purpose of the underlying action, we conclude that such fees are not payable out of the assets of the receivership estate." Beyond that we believe that granting of the application would have been an abuse of discretion on the facts here.

Finally, appellants have asserted that they continued to represent defendants in their opposition to the appointment of a receiver (even though they realized, as they admitted at oral argument, that by the terms of the TRO defendants had no contractual right to engage their services) because they relied on the acts and omissions of others in this litigation which had the effect of encouraging them to believe that they would be permitted to recover out of the receivership estate. We find no action by the court which could have so encouraged them. Indeed, the April 2, 1971, order, which required the *individual* defendants to establish an Indemnity Account to indemnify customers from any depletion of the assets as a result of further expenditures by the corporate defendants, should have placed appellants on notice that they could not look confidently to the receivership estate for recompense. We also reject any contention that omission of the parties and the court in failing to warn appellants of the danger of their position caused prejudicial reliance on their part. The law is not so unclear in this area and, as the Supreme Court has said in an analogous context, "We are not prepared to go further than to allow compensation for services which were beneficial to the estate. Beyond that point we must throw the risk of his conduct on the assignee [who asserted a claim for attorneys' fees in resisting an adjudication of involuntary bankruptcy against the assignor, which had made a general assignment for the benefit of creditor later set aside when the assignor was adjudicated bankrupt within four months of the assignment], as he was chargeable with knowledge of what might happen. . . . No ground appears for allowing the item for services in resisting an adjudication of bankruptcy." Randolph v. Scruggs, *supra,* 190 U.S. at 539, 23 S.Ct. at 713. The best argument adduced by appellants is that at an earlier time, in response to their application for fees, the receiver supported them insofar as the application was for services on behalf of the corporate, as opposed to the individual, defendants,[3] and that the SEC's only quarrel with the award of fees was that it was unable to ascertain what the proper apportionment was between services rendered to individuals and to the corporate defendants. Since the affidavits appellants refer to are dated December 14, 1971, and November 11, 1971, after the appointment of the receiver and the end of the period for which appellants assert their claim, we do not see how appellants could have relied on them. If they merely express in writing an earlier understanding, we have seen no evidence of this and thus have no occasion to consider what, if anything, the consequence would be.

Affirmed.

---

**3.** The receiver subsequently changed his position on even this after he gave the *Hughes* case careful consideration.