**In re JOHN MUIR & CO., Bankrupt.**

**Bankruptcy No. 81 B 11761 (HCB).**

United States Bankruptcy Court, S.D. New York.

July 17, 1985.

Levitt Greenberg Kaufman & Goldstein, P.C. by Bernard L. Goldstein, and Laurence Tauber, New York City, for claimant, Neuberger & Berman.

Weil, Gotshal & Manges by Richard P. Krasnow, and Christopher F. Graham, New York City, for trustee.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp. by Michael E. Don, and Stephen P. Harbeck, Washington, D.C., for SIPC.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

This proceeding raises the question of whether a stock loan transaction between two stock brokers is entitled to the protection of the Securities Investor Protection Corporation ("SIPC") as provided under the Securities Investor Protection Act of 1970, as amended ("SIPA") (15 U.S.C. § 78aaa *et seq.*).

I

At the request of Neuberger & Berman ("Neuberger"), John Muir & Co. ("Muir") loaned Neuberger a total of 6,500 shares of stock issued by Colonial Commercial Corporation ("Colonial") on August 12 and 13, 1980. Neuberger borrowed the stock to cover a short sale made by one of its customers. It deposited $39,000, or $6 a share, the minimum deposit, with Muir as collateral for the stock, although the stock itself was worth far less. An account designated as a stock loan account was opened at Muir only in Neuberger's name. The account reflected no other transactions except for Muir's lending of the stock and Neuberger's cash collateral deposit of $39,000. The collateral was to be returned to

Neuberger upon its delivery of 6,500 shares of Colonial stock to Muir.

The United States District Court for the Southern District of New York entered a protective decree under SIPA § 78eee(b)(1) on August 17, 1981, adjudging that Muir's customers were in need of SIPA protection. That same day a trustee was appointed for the liquidation of Muir's business, and the SIPA proceeding was removed from the district court to this court pursuant to § 78eee(b)(4).

When the liquidation proceedings began on August 17, 1981, Muir's stock loan to Neuberger remained open and unsatisfied. Subsequently, Neuberger acquired 6,500 shares of Colonial stock and then sold them at a loss of $32,500. Neuberger sought SIPC protection for its loss in this amount, but the Trustee's Determination, dated January 21, 1983, denied such protection. Instead, the Trustee sought to classify Neuberger's claim against Muir as a general unsecured claim. Neuberger filed an objection on February 16, 1983, to the Trustee's denial of SIPC protection to its claim. A hearing was held on January 27, 1984, before the late Judge John J. Galgay to consider the Trustee's Determination and Neuberger's objection. The parties have stipulated that the matter may be decided by the undersigned.

Neuberger contends first, that the account it opened with Muir was for its customer, the short seller, in connection with securities transactions, and is therefore entitled to SIPC protection. Second, if the account is not held to be that of Neuberger's customer, then the entire stock loan transaction should be seen as an open contractual commitment between Neuberger, on behalf of its customer, and Muir. It thus asserts that the account ought to be closed out in accordance with SIPC Rule 300.301 (17 C.F.R. § 300.301 (1983)). Neuberger further argues that denial of SIPC protection to a stock loan made in connection with securities transactions violates Congress' intent in passing SIPA. Therefore, even if the transaction does not meet the literal requirements of SIPC Rules

300.300–300.301, this court should nonetheless authorize a closeout by its power under SIPC Rule 300.307.

## II

The purpose of SIPA, and SIPC, which it created, is the protection of public customers of securities dealers from the consequences of financial instabilities in the brokerage industry. *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 281 (2d Cir.1974). Such protection, however, is limited to only those who meet SIPA's definition of "customer." *Id.* A customer is defined under 15 U.S.C. § 78111(2) as:

> ... any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consumated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities...

In interpreting that definition, the *Baroff* court noted that the legislative history of SIPA emphasized protection for "the customer as investor and trader, not [for] others who might become creditors of the broker-dealer for independent reasons." *Baroff,* 497 F.2d at 283. It also quoted the House Report, stating that: " 'The primary purpose of the reported bill is to provide protection for *investors if the broker-dealer with whom they are doing business* encounters financial troubles.' " *Id.* (emphasis supplied).

The *Baroff* analysis was followed by the court in *Securities Investor Protection Corp. v. Executive Securities Corp.*, 423 F.Supp. 94 (S.D.N.Y.1976), *aff'd,* 556 F.2d 98 (2d Cir.1977). In determining that the claimants were not "customers" of a failed

securities brokerage and entitled to SIPC protection, the court held that a customer under SIPC "is clearly limited to persons who maintain accounts with broker-dealers and who trade or invest *through them.*" 423 F.Supp. at 98 (emphasis supplied).

■ Both SIPC's definition of "customer", and the interpretation of that phrase in this Circuit lead to the inescapable conclusion that Neuberger's customer, the short seller, cannot be deemed a customer of Muir solely because Neuberger borrowed stock to cover the short sale. Under the *Baroff* test, as elaborated by *Executive Securities*, Neuberger's customer did not become a customer of Muir even though Neuberger might have acted as agent. The borrowing of securities from one broker by another to cover a short sale by the latter's customer did not open the type of account sought to be protected by the grant of customer status under SIPA since the loan was "not incidental to an existing investment or trading account with the debtor." *Executive Securities*, 423 F.Supp. at 96. While the short seller obviously had such an account with Neuberger, through which it traded in Colonial securities, the account at Muir itself was specifically designated as a stock loan account, as opposed to a trading or investment account.

■ Neuberger claims it is anomalous to deny customer status to the stock loan transaction when it is made through Muir, but to allow the status for SIPC protection were Neuberger to be the bankrupt. (Neuberger memo, p. 9). Such a result, however, makes perfect sense and is in keeping with the purpose of SIPA. The short seller is simply not a customer of Muir as it is a customer of Neuberger. There is consequently no reason to give SIPC protection to a stock claim solely founded upon a lending relationship when such protection was specifically intended for trading and investor customers of the bankrupt brokerage house. *Baroff,* 497 F.2d at 283. As noted in *SEC v. Packer, Wilbur & Co.,* 498 F.2d 978, 984 (2d Cir.1974), the purpose of SIPA was to protect "members of the in-vesting public, not brokers. There was no intention to 'bail out' the securities industry."

### III

Neuberger's alternative argument, that it had an open contractual commitment with Muir, thereby requiring SIPC protection, also fails. Neuberger seeks a close-out under 15 U.S.C. § 78fff–2(e), which provides, in pertinent part:

(1) Any contract of the debtor for the purchase or sale of securities in the ordinary course of its business with other brokers or dealers which is wholly executory on the filing date shall not be completed by the trustee, except to the extent permitted by SIPC rule....

Thus, a contract to fall under this section must be a contract through which the debtor would purchase or sell securities. Pursuant to § 78fff–2(e), SIPC has promulgated rules regarding closeouts of open contractual commitments. As contemplated by the statute, they also specify that the protected transactions involve a purchase or sale of securities. *See* SIPC Rule 300.-300(a), (c) (17 C.F.R. § 300.300(a), (c)).

■ It is clear from the statutory language and from the rules that a stock loan such as the present one is not protected under SIPA as an open contractual commitment. Accordingly, Neuberger attempts to fit the square peg of its loan transaction through the round hole of the statute requiring a purchase or sale. It asserts that the evidence of the parties' contemporary characterization and treatment of the transaction is to be ignored in light of its "economic reality." (Neuberger memo, p. 14). This argument is, however, of no merit. In the securities industry,

The relationship between the short-seller and the lender of stocks to make delivery under the "short-sale" is merely that of borrower of stocks and lender, and pledgor and pledgee, the lender of the stocks lending them upon deposit of the market value of the stocks borrowed (and sometimes upon payment of a premium). The

usual rules of borrower and lender and pledgor and pledgee apply.

W. Black, *The Law of Stock Exchanges, Stockbrokers & Customers*, 648 (1940); *cf., Baroff*, 497 F.2d at 284.

 Nothing in this record evidences any different relationship or supports treatment of a loan transaction as an agreement between Neuberger and Muir to purchase and sell securities. In a short sale, the short seller sells stock it does not own, hoping to make a profit by purchasing the stock later on at a lower price. The short seller's broker procures the stock in the meantime so the sale can be made. The broker may use stock from its own inventory, or borrow it from another broker. Here, Neuberger borrowed the securities from Muir in order to cover its (Neuberger's) customer's short sale. Any purchase and sale that occurred was between the short seller and the buyer. The short seller was then obligated to buy 6,500 shares of Colonial stock. Neuberger, meanwhile, had to return 6,500 shares of Colonial stock to Muir in order to obtain its $39,000 collateral. Within the context of the meaning of a short sale, Neuberger did not purchase the securities from Muir; Neuberger borrowed them. Furthermore, as SIPC's memo (p. 8) points out, it is highly unlikely that a broker would "purchase" securities at an amount six times the market value. Rather, posting collateral in that amount permits the lender to earn interest that it would otherwise have been paid by the borrower.

### IV

Neuberger's final contention is that even were its transaction with Muir found not to meet the literal requirements of SIPC Rules 300.300–300.301, this court should authorize a closeout under Rule 300.307. This latter provision allows the court to authorize the trustee to "complete an open contractual commitment of the debtor, regardless of whether it is described in § 300.300(c) or meets the requirements of § 300.301..."

The plain purpose of this rule is to permit a SIPA trustee to maximize the estate in a fashion similar to the assumption of an executory contract under § 365 of the Bankruptcy Code. The trustee here seeks no such authorization and there is no indication that such authorization would in any way benefit this estate. Indeed, to permit such a closeout would be contrary to the purpose of SIPA, its language, and the interpretation given it by the courts as noted above.

The claimant's objection to the Trustee's Determination of its claim must, therefore, be dismissed and the Trustee's Determination sustained. The foregoing constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

SETTLE ORDER.