**In re BRITTENUM & ASSOCIATES, INC., Debtor.**

**Bankruptcy No. AP 86–50M.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

June 24, 1987.

James F. Dowden, Little Rock, Ark., Trustee.

Robert R. Ross, Arnold, Grobmyer & Haley, Little Rock, Ark., for trustee.

Stephen P. Harbeck, Washington, D.C., for Securities Investor Protection Corp.

Hon. John Biscoe Bingham, N. Little Rock, Ark., for Pattersons.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On January 30, 1986, the United States District Court for the Eastern District of Arkansas entered an order pursuant to 15 U.S.C. § 78eee(b)(1) of the Securities Investor Protection Act of 1970 (SIPA), stating that the customers of Brittenum & Associates, Inc. (debtor), a securities dealer, were in need of SIPA protection. The Honorable James F. Dowden was appointed trustee by the district court, and the case was removed to the bankruptcy court for administration and liquidation pursuant to 15 U.S. C. § 78eee(b)(4).

In a SIPA liquidation proceeding of a securities dealer, creditors who assert that they are customers of the securities dealer are required to file claims. Lloyd Patterson and Phillip Patterson filed claims 165 and 166 as joint claims. The two claims alleged that Lloyd and Phillip Patterson were customers of the debtor and that the debtor held securities of theirs which totaled in value $305,000.00. The trustee, by letter dated July 2, 1986, notified the Pattersons that claims 165 and 166 were not claims of customers of the debtor, and, therefore, that SIPA provided no relief to them. The trustee advised the Pattersons that if they disagreed with his determination a written objection had to be filed in the bankruptcy court within thirty days after the date of the letter, and the Pattersons timely petitioned this Court.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction to enter a final judgment in this case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052.

In 1981 the debtor was a registered securities brokerage firm with offices in Little Rock, Arkansas. Jon R. Brittenum (Brittenum) owned 100% of the debtor's stock. Lloyd Patterson was a retired bus driver who lived in North Little Rock, Arkansas, and Phillip Patterson was his son. Keith Brinkley was employed by the debtor as a bond salesman and was a long time family friend of the Pattersons. Brinkley testified that Brittenum asked him if he knew of anyone who might be interested in "putting some money in the company" because Brittenum needed to "raise some money as quick as possible in order to get the capital up to some point in order to inventory more bonds or carry more bonds on inventory so that [the debtor] would not be out of compliance." Record at 44. Brittenum offered to pay Brinkley a commission for securing an investor. As a result of Brittenum's request, Brinkley solicited Lloyd Patterson for the purpose of inducing him to loan securities to Brittenum. The Pattersons were advised by Brinkley and Brittenum that the purpose of the investment was "to raise additional capital for the company." Record at 46. Brittenum also represented to the Pattersons that their investment would be insured by the Securities Investor Protection Corporation (SIPC) because the securities would be kept in the debtor's safe deposit box.

After some negotiations, an agreement was reached and the transaction was structured as follows: Jon R. Brittenum personally executed a promissory note payable to Lloyd Patterson or Phillip Patterson for $211,894.10 and a promissory note to Phillip Patterson or Lloyd Patterson for $100,-000.00. The notes paid interest at the rate of 12% per annum. In consideration, the Pattersons executed an assignment of securities to Brittenum consisting of certificates of deposit and U.S. treasury notes. The securities were assigned in a manner which would enable Brittenum or his assigns to freely negotiate them. Brittenum simultaneously assigned the securities to the debtor. The agreement was that the Pattersons would continue to receive the interest payable from the securities, on which interest rates ranged from 7.5% per annum to 14% per annum. The 12% per annum interest due the Pattersons on the notes executed by Brittenum was to be paid by Brittenum, individually, and not by the debtor. The securities were supposed to be held by the debtor in a safe deposit box at a local bank and were to be returned to the Pattersons upon demand. As the securities matured, the Pattersons would replace them with new securities purchased from a local financial institution. No customer accounts were created on the stock record of the debtor concerning these transactions.[1] The debtor's records do not reflect that the Pattersons' securities were ever held in a customer safekeeping arrangement.

Notwithstanding the representations that the securities would be maintained in the safe deposit box and would not be negotiated, by the time the liquidation proceeding had begun, all of the securities had been traded to third parties by the debtor.

The issue for the Court to decide is whether Lloyd and Phillip Patterson may be classified as "customers" of the debtor within the scope of protection provided by SIPA.

The court in *In re Hanover Square Securities*, 55 B.R. 235 (Bkrtcy. S.D.N.Y. 1985) discussed the historical background and importance of the determination of this issue as it relates to SIPA claimants.

Affording customer status confers preferential treatment, allowing the claimant's debt to be satisfied from monies advanced to the trustee by SIPC. *See* 15 U.S.C. § 78fff–(3)(a). Denied customer status, claimants are entitled only to the distribution ultimately made to general unsecured creditors of the debtor's estate. A look at the history of SIPA is enlightening in analyzing the parties' dispute.

SIPA's enactment was a response to serious financial problems pervading the securities industry, H.R.Rep. No. 1613, 91st Cong., 2d Sess. 2 (1970) *reprinted in* 1970 U.S. Code Cong. and Ad. News 5254, 5255. The act was designed to

> afford protection to public customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations to their public customers.

*SEC v. Alan F. Hughes, Inc.*, 461 F.2d 974, 977 (2d Cir.1972). *See also SIPC v. Barbour*, 421 U.S. 412, 414, 95 S.Ct. 1733, 1735, 44 L.Ed.2d 263 (1975); *SIPC v. Morgan, Kennedy & Co. Inc.*, 533 F.2d 1314, 1316 (2d Cir.1975), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976). To implement this goal, SIPC was established; its main function is to liquidate a broker or dealer when customers' assets are in danger. *Morgan, Kennedy*, 533 F.2d at 1316. The purposes of a liquidation under SIPA are

> 1) delivery of customer name securities to customers and distribution of

---

**1.** On July 1, 1985, at Lloyd Patterson's request, the debtor sold one of the U.S. treasury notes and issued a check to Lloyd Patterson for the proceeds. The debtor then purchased new treasury notes at the request of Lloyd Patterson for $62,004.62. This transaction was reflected in the stock records of the debtor and a confirmation slip was issued by the debtor, reflecting Lloyd Patterson's trading account number. Lloyd Patterson then executed an assignment of the newly purchased U.S. treasury notes to Brittenum, who subsequently reassigned them to the debtor. No other transaction is reflected in Lloyd Patterson's account.

customer property and net equity claims as promptly as possible after appointment of a trustee,

2) sale or transfer of offices and other productive units of the debtor's business,

3) enforcement of rights of subrogation provided by SIPA, and

4) liquidation of the debtor's business.

*In re MV Securities, Inc.* 48 B.R. 156, 159 (Bankr.S.D.N.Y.1985); 15 U.S.C. § 78fff(a). To facilitate the first of these enumerated purposes, SIPC may make advances to the trustee and becomes subrogated to the extent of its advances to the customer claims thereby paid; these advances must be repaid before payment of claims of general unsecured creditors. 15 U.S.C. § 78fff(a); *see also SIPC v. Associated Underwriters, Inc.,* 423 F.Supp. 168, 170–73 (D.Utah 1975). SIPC advances are limited to $500,000 per customer, no more than $100,000 of which may be based on a claim for cash (as opposed to securities). 15 U.S.C. § 78fff–3(a)(1).

*In re Hanover Square Securities,* 55 B.R. at 237.

The term "customer" is defined in SIPA as follows:

The term 'customer' of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include—

(A) any person to the extent that the claim of such person arises out of transactions with a foreign subsidiary of a member of SIPC; or

(B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

15 U.S.C. § 78*lll*(2).

In 1978, amendments were made to the definition of the term "customer," deleting from the former definition the phrase which had stated that customers are protected if they have claims "by way of *loans of securities* ... to the debtor stockbroker." 4 *Collier on Bankruptcy* ¶ 741.02[4] (15th ed. 1987) (emphasis added).

The definition of 'customer' should include only a person who enjoys the type of fiduciary relationship with the debtor that characterizes customers in general.... [C]ustomer status should not be extended to lenders of securities to the debtor where such lenders have received either collateral or consideration for their loans. Lenders of securities in such circumstances can reasonably be expected to bear the risk of the failure of the debtor's business.... Whatever their rights may be, it is not appropriate to treat such persons as customers.

*SIPA Amendments: Hearings on H.R. 8331 Before the Subcomm. on Securities of the Senate Comm. on Banking, Housing, and Urban Affairs,* 95th Cong., 2nd Sess. 40–41 (1978).

Courts that have considered the issue of who is a customer of a broker-dealer emphasize two factors: the transactions which form the basis of the claim must have been related to investment trading or participation in the securities market, and the transactions must have arisen out of the type of fiduciary relationship which generally characterizes the relationship between the broker-dealer and its customers. *In re*

*Bevill, Bresler & Shulman Asset Mgmt. Corp.*, 67 B.R. 557 (D.N.J.1986). *See In re Investors Security Corp.*, 6 B.R. 420, 424 (Bkrtcy.W.D.Pa.1980) ("[T]he primary inquiry is whether [claimant] entrusted cash with the debtor ... in such a manner that a fiduciary relationship ... was created."); *SEC v. F.O. Baroff Co.*, 497 F.2d 280, 283 (2nd Cir.1974) ("[T]he legislative history ... stressed protection to, and equality of, treatment of the public customer who has entrusted securities to a broker for some purpose connected with participation in the securities markets."); *In re Hanover Square Securities*, 55 B.R. 235 (Bkrtcy.S. D.N.Y.1985) ("Congress intended to protect those who had entrusted cash or securities to their broker/dealers for the purpose of trading and investing."). *See also In re Stalvey & Assoc.*, 750 F.2d 464 (5th Cir. 1985); *In re John Muir & Co.*, 51 B.R. 150 (Bkrtcy.S.D.N.Y.1985).

The transactions between the Pattersons, Brittenum and the debtor did not relate to investment trading or participation in the securities market on the Pattersons' behalf. The Pattersons agreed to transfer the securities to Brittenum for a fixed return, and the Pattersons even insisted that the securities be placed in a safe deposit box, as opposed to traded in the market for their benefit. The Pattersons were investors in the sense that they invested *in* the debtor, through its sole shareholder in the form of loans. But the Pattersons did not invest *through* the debtor, and, therefore, no fiduciary relationship was created which could afford them SIPA protection.

The fact that the Pattersons were unsophisticated in securities matters and were misinformed by Brittenum is unfortunate, but it is not relevant to the issue of whether they were customers of the debtor; the nature of the transactions determines customer status. The Pattersons were induced to loan their securities to Brittenum with the promise of an enhanced rate of interest, and they were fully informed that Brittenum intended to assign the securities to the debtor in order to increase the debtor's capital base. The Pattersons' risk of loss increased when they gave up possession of their interest bearing securities in exchange for Brittenum's notes, which, although increasing the Pattersons' potential rate of return, depended on the debtor's solvency for payment. Even unsophisticated investors realize that as the promised rate of return on an investment increases, so does the risk attendant to that investment.

The Pattersons made indirect loans to the debtor through Brittenum, and they are not in that class of investors which SIPA was designed to protect. *See SEC v. F.O. Baroff Co.*, 497 F.2d at 284; *In re Hanover Square Securities*, 55 B.R. at 239–40; *SIPC v. Executives Securities Corp.*, 556 F.2d 98, 99 (2nd Cir.1977). "SIPA was not designed to provide full protection to all victims of a brokerage collapse." *SEC v. Packer, Wilbur & Co.*, 498 F.2d 978, 983 (2nd Cir.1974).

The claims of the Pattersons are determined not to be claims of customers.

IT IS SO ORDERED.