345 S.E.2d 814

**Robert Gary CRAIGO**

v.

**Hon. John HEY, Circuit Judge and Hon. A. Andrew MacQueen, Chief Judge.**

**and**

**James M. OXIER**

v.

**RANDOLPH COUNTY CIRCUIT COURT.**

**Nos. 17085, 17086.**

Supreme Court of Appeals of West Virginia.

June 6, 1986.

**516**

Robert Gary Craigo, and James M. Oxier, pro se.

A. Andrew MacQueen, Charleston, for appellees.

NEELY, Justice:

Robert Gary Craigo and James M. Oxier are indigent prisoners. Each has brought a civil suit in his own name, and each has had little success in prosecuting his action. Although we have held that a convict may sue in his own name, *Craigo v. Marshall*, 175 W.Va. 72, 331 S.E.2d 510 (1985), we have not detailed what aid the State of West Virginia must provide to indigent convicts to bring civil suits. Today we hold that indigent convicts enjoy the same right to legal aid as indigent freemen, but no more.

I

Mr. Craigo alleged in his petition for a writ of mandamus in this court that two Kanawha County circuit court judges have refused to docket his civil action pursuant to 42 U.S.C. § 1983 [1979] against the Mayor of Charleston and "certain City of Charleston police officials". Chief Judge A. Andrew MacQueen answered that he has reinstated Mr. Craigo's action to the active docket of his court. Accordingly, we dismiss Mr. Craigo's mandamus petition as moot.

Mr. Oxier has petitioned this Court for a writ of mandamus to compel the Circuit Court of Randolph County to appoint counsel. His legal assistance problems arise from suits he has filed as plaintiff in the Circuit Court of Randolph County over alleged personal injuries. The defendants' attorneys in these suits by Mr. Oxier have filed motions to dismiss Mr. Oxier's claims on the grounds that they were brought outside the two-year statute of limitations. Mr. Oxier states that he does not know what further action to take, because he does not have an attorney; no attorney will take his case; and, he does not possess the requisite legal knowledge to prosecute his cases himself.

## II

We have come a long way from the days when conviction of a criminal offense carried with it the penalty of "civil death," a doctrine under which society stripped a convict of his right to sue. Furthermore, in an earlier case involving Mr. Craigo, we held that a convict is free to file a civil action without having of a committee appointed pursuant to *W.Va.Code*, 28–5–33 [1982], or by using a "next friend" pursuant to *W.Va.R.Civ.P.* 17(c). Syl. Pt. 1, *Craigo v. Marshall*, 175 W.Va. 72, 331 S.E.2d 510 (1985). Although we have removed most of the barriers to access to the courts that a convict has historically faced, we have not detailed the affirmative actions the state must take to insure that this access to the courts is meaningful. Even in cases where there is no absolute right to counsel, the peculiar circumstances of a case may make the assistance of counsel necessary.

At the outset we note that we exclude criminal cases from our analysis here. The 6th and 11th Amendments to the *Constitution of the United States* require the appointment of counsel for an indigent in all criminal proceedings. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Additionally, prisoners are entitled to assistance of counsel in cases involving fundamental constitutional rights raised in civil habeas corpus proceedings.[1] But these holdings have no bearing on the question before us today concerning whether prisoners have a right to court-appointed counsel in ordinary civil actions.

Indigent civil litigants do not have a constitutional or statutory right to legal representation in all cases. "Nevertheless, particularly when rights of a constitutional dimension are at stake, a poor person's access to the federal courts must not be turned into an exercise in futility. *See Bounds v. Smith*, 430 U.S. 817, 821–824 [97 S.Ct. 1491, 1494–1496, 52 L.Ed.2d 72] (1977); *Haines v. Kerner*, 404 U.S. 519, 520 [92 S.Ct. 594, 595, 30 L.Ed.2d 652] (1972)." *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.1983). The principle of meaningful access is reflected in many decisions by the Supreme Court of the United States, lower federal courts, and the state courts. Furthermore, Congress in 28 U.S.C. § 1915 [1979],[2] and the West Virginia Legislature in *W.Va.Code*, 59–2–1 [1923][3] have indi-

---

**1.** In West Virginia we have addressed indigent convicts' need for legal aid in habeas corpus proceedings by statute. *See W.Va.Code*, 53–4A–4 [1981].

**2.** 28 U.S.C. § 1915 [1979] states:

(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b) Upon the filing of an affidavit in accordance with subsection (a) of this section, the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title or under section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

(c) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

(e) Judgment may be rendered for costs at the conclusion of the suit or action as in other cases, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

**3.** *W.Va.Code*, 59–2–1 [1923] states:

*A poor person may be allowed by a court to sue or defend a suit therein without paying*

.cated that the courts must be available to the rich and poor alike.

■ It has long been noted that it is not necessary to provide legal assistance for every conceivable civil claim prisoners wish to process. Both the courts and the legal assistance agencies themselves have the right to determine which claims merit legal assistance. *Kelsey v. State of Minnesota,* 622 F.2d 956, 958 n. 2 (8th Cir.1980); *See generally Johnson v. Avery,* 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969). But although trial courts have no duty to appoint counsel to represent indigent civil litigants, imprisoned or not, 28 U.S.C. § 1915 [1979] and *W. Va. Code,* 59–2–1 [1923] endow trial courts with the discretion to do so. *Willett v. Wells,* 469 F.Supp. 748 (E.D.Tenn.1977) *aff'd without opinion* 595 F.2d 1227 (6th Cir.1979) (interpreting 28 U.S.C. § 1915). · And although the trial courts must exercise this discretion on a case by case basis, we can identify certain classes of cases where appointment of counsel will usually be proper and certain classes where appointment will seldom be proper.

■ It is impossible to establish hard-and-fast guidelines for the appointment of counsel for indigent prisoners, but it is possible to sketch a general typology that will provide a frame of reference for the intelligent use of discretion. Three general classes of cases emerge as follows: (1) Civil cases where the state has traditionally provided legal aid to indigents such as di-vorce, paternity, or the termination of parental rights, (2) fee generating cases, and (3) civil rights cases. In the first type of case there is a presumption in favor of appointing counsel for defendants; in the second type there is a presumption against appointing counsel; and, in the third type the circuit court should apply a five factor test before deciding whether to appoint counsel for the preparation of the petitioner's complaint.

## A. CIVIL CASES WHERE THE STATE HAS TRADITIONALLY PROVIDED LEGAL AID TO INDIGENTS

West Virginia has long allowed poor persons to sue or defend a suit without paying fees or costs. *W. Va. Code,* 59–2–1 [1923] has been used in cases where indigent freemen have sought dissolutions of their marriages without paying fees or costs. *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971).[4] Furthermore, we have held that due process requires appointed counsel for indigent parties to suits involving termination of parental rights,[5] *State ex rel. Lemaster v. Oakley,* 157 W.Va. 590, 203 S.E.2d 140 (1974), and insanity proceedings, *State ex rel. Hawks v. Lazaro,* 157 W.Va. 417, 202 S.E.2d 109 (1974).[6] Other jurisdictions have found a constitutional guarantee to counsel in cases involving paternity.[7] Finally, these types of proceedings have historically been handled by public legal services. *W. Va. Code,* 29–21–2(3)

---

*fees, or costs, whereupon he shall have from any counsel which the court may assign him and from all officers, all needful services and process, and also the assistance of witnesses, without any fees to them therefor, except what may be included in the costs recoverable from the opposite party.* A poor person, within the meaning of this section, shall be one who shall make and file in the court, or with the officer whose services may be demanded or required, an affidavit stating that he is pecuniarily unable to pay fees or costs, or counsel fees, and upon the filing of such affidavit in court or with any officer, then such officer shall perform any services required by law to be performed by him, as if the legal fees for such services has been paid. If any person shall swear falsely in such affidavit, and shall represent himself to be a poor person within the meaning of this article, when in fact he is pecuniarily able to pay the fees fixed by law, or to pay reasonable counsel fees, in any suit or action wherein he is a party, he shall be guilty of false swearing, and, upon conviction thereof, shall be punished as provided by law for such offense. [Emphasis by the Court].

4. *See generally* Annot., 85 A.L.R.3d· 983 (1978) (Right of indigent to appointment of counsel in a divorce action).

5. *See generally* Annot., 80 A.L.R.3d 1141 (1977).

6. *See generally* Annot., 87 A.L.R.2d 950 (1963).

7. *See generally* Annot., 4 A.L.R.4th 363 (1981).

[1983].[8] Accordingly, in cases such as these, where an indigent prisoner is a defendant, the circuit court should appoint counsel.

However, unless there is some extraordinary, urgent circumstance, prisoners have no right to have counsel appointed for them as plaintiffs in these cases unless they can show that they will forfeit some important right if not permitted to attend court before their release dates. Imprisonment naturally brings restraints on liberty—one of which is a restraint on going to the courthouse as well as to the supermarket. And we must not be unmindful that while litigation is vexatious for the freeman it is often recreational for the prisoner. Prisoners perceive going to court as a way of getting home to visit friends and family, and as a temporary respite from a tedious penitentiary environment. The tribulations of litigation present no opportunity costs to an inmate, but litigation presents substantial costs to the state if the inmate must be transported to the courthouse with attendant security.

## B. FEE GENERATING CASES

In fee generating cases, such as the personal injury claim that Mr. Oxier brings, prisoners may file suit in *forma pauperis*, but unless there are extraordinary circumstances, the court should not appoint counsel. *Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir.1982); *Cook v. Bounds*, 518 F.2d 779 (4th Cir.1975); *Securities and Exchange Commission v. Alan F. Hughes*, 481 F.2d 401 (2nd Cir.1973); *Ehrlich v. Van Epps*, 428 F.2d 363, 364 (7th Cir.1970); *Loren v. Jackson*, 57 N.C.App. 216, 291 S.E.2d 310 (1982). A convict's request to have counsel appointed is predicated on his inability otherwise to obtain counsel.[9] But because the potential fee in meritorious cases should be enough to attract a lawyer, the presumption is against appointing counsel in fee generating cases. For exactly this reason these cases have not traditionally been the domain of public legal services. *W.Va.Code*, 29–21–2(3) [1983]. This is overwhelmingly the majority position and we see no reason to deviate from the majority rule.

However, we do not accept the majority position without qualification. The circuit courts must recognize that there is a significant difference between a prisoner's and a freeman's ability to solicit the aid of a private lawyer. Consequently, our trial courts should maintain a roster of lawyers willing to undertake fee generating litigation on behalf of indigent prisoners and willing to make reasonable efforts to determine the legal and factual validity of such claims.[10] This should insure that prisoners

---

8. *W.Va.Code*, 29–21–2 [1983] states in pertinent part:

    (3) "Eligible proceeding" means any of the following proceedings or charges: Serious criminal charges, juvenile proceedings, contempts of court, child abuse and neglect proceedings, mental hygiene commitment proceedings, paternity proceedings, or any post conviction, extraordinary remedy or other appellate proceeding arising out of an eligible proceeding or any other type of proceeding in which the West Virginia state supreme court of appeals or the United States supreme court has specifically held an indigent person is constitutionally entitled to legal representation.

9. Judge Posner has explained: "But where damages are sought, the prisoner should have no difficulty finding a lawyer willing to take his case on a contingent fee basis, provided the case has some merit. Encouraging the use of retained counsel thus provides a market test of the merits of the prisoner's claim. If it is a meritorious claim there will be money in it for a lawyer; if it is not it ought not be forced upon some hapless unpaid lawyer." *McKeever v. Israel*, 689 F.2d 1315, 1325 (7th Cir.1982) (Posner, J., dissenting).

10. Circuit courts may request that legal services organizations in their respective jurisdictions assist them in compiling such a roster. There are currently four distinct, non-integrated legal services organizations operating in West Virginia. For the convenience of the circuit courts, we list them and their branch offices, with telephone numbers, below.

    I. **West Virginia Legal Services Plan, Inc.:**

    1033 Quarrier Street
    Suite 700
    Charleston, WV 25301
    342–6814, (800) 642–8279

    305½ Fourth Street
    Parkersburg, WV 26101
    485–7522

    P.O. Box 689
    103 N. Court Street
    Lewisburg, WV 24901
    645–3131

    Methodist Building
    11th and Chapline
    Wheeling, WV 26003
    232–1260

have at least one or more conscientious lawyers to evaluate their claims and accept representation in meritorious cases. These rosters should be updated at least annually and provided to prisoners seeking legal assistance. If it is impossible to construct such a roster, then we will be compelled to think again about the problem, but we leave that for another day.

## C. CIVIL RIGHTS CASES

■ Appointment of counsel in civil rights cases is discretionary and warranted only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779 (4th Cir.1975); *Owens v. Swift Agr. & Chemical Corp.*, 477 F.Supp. 91 (E.D.Va.1979).[11] Civil rights cases often present extremely complex issues and claims. Accordingly, a complainant may need a lawyer's help if his claim is to be made intelligible. Even though 42 U.S.C. § 1988 [1980] allows the award of fees and creates a market incentive for lawyers to take meritorious civil rights claims, because of the complexity of these claims, the market may be a poor barometer of a claim's merit. Unfortunately, the vast majority of civil rights claims filed by prisoners are frivolous. In fiscal year 1981, almost 16,000 suits under 42 U.S.C. 1983 [1979] were brought by state prisoners. *McKeever v. Israel*, 689 F.2d 1315, 1323 (7th Cir.1982) (Posner, J., dissenting). Designing a prophylactic device that will provide for counsel in meritorious cases without sending a *tsunami* of. lawsuits crashing down upon the courthouse is a formidable task.

■ The blanket presumptions applied in the first two classes of cases are inappropriate when applied to civil rights cases. Because civil rights cases are difficult for both lawyer and judge to evaluate on the basis of an indigent convict's *pro se* complaint, it is at the suit's initial stages that legal help is crucial. Thus where a *pro se* litigant has a colorable claim but lacks capacity to present it, the court should appoint counsel to assist him prepare his complaint. *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir.1978). After an indigent, imprisoned or free, files a *pro se* petition requesting the appointment of counsel in a

P.O. Box 1898
400 W. Martins Street
Martinsburg, WV 25401
263–8871

Doctors Building
115 S. Fourth Street
Clarksburg, WV 26301
623–6649

West Virginia Building
Suite 700
910 Fourth Avenue
Huntington, WV 25701
697–2070

### II. Appalachian Research and Defense Fund, Inc.:

1116 B. Kanawha Blvd.
East
Charleston, WV 25301
344–9687

P.O. Box 5145
Beckley, WV 25801
255–0561

101 Maple Avenue
Room 3
Fayetteville, WV 25840
574–2850

504 White & Browning
Bldg.
Stratton Street
Logan, WV 25601
752–4178

704 Straley Avenue
Princeton, WV 24740
487–1463

P.O. Box 1049
Welch, WV 24801
436–8476

P.O. Box 1519
Williamson, WV 25661
235–6751

P.O. Box 36
Hamlin, WV 25523
824–7634
(served by Charleston office)

P.O. Box 338
Main Street
Pineville, WV 24874
732–8441
(served by Welch office)

### III. North Central West Virginia Legal Aid:

175 Walnut Street
Morgantown, WV 26505
(800) 344–3359

### IV. Legal Aid Society of Charleston:

1033 Quarrier Street
Charleston, WV 25301
343–4481

Putnam County Office
Putnam County Courthouse
Winfield, WV 25213
586–4239
(served by Charleston office)

Boone Satellite Office
Boone Co. Courthouse
Room 202
Madison, WV 25130
369–4939
(served by Charleston office)

Clay Satellite Office
P.O. Box 561
Clay, WV 25043
586–4668
(served by Charleston office)

11. Other circuits considering appointment of counsel for civil rights plaintiffs under 28 U.S.C. § 1915 [1979] have generally agreed that such appointments are appropriate under "exceptional circumstances." *Branch v. Cole*, 686 F.2d 264 (5th Cir.1982); *Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir.1980); *Willett v. Wells*, 469 F.Supp. 748, 751 (E.D.Tenn.1977), *aff'd without opinion* 595 F.2d 1227 (6th Cir.1979). And other circuits have expressed the same reluctance to appoint counsel but in different phraseologies. *See, Peterson v. Nadler*, 452 F.2d 754 (8th Cir.1971) (appointment "rare" but authorized); *Bethea v. Crouse*, 417 F.2d 504 (10th Cir.1969) (appointment "only where liberty at stake"). *See generally* Annot., 69 A.L.R.Fed. 666 § 3[a] (1984).

civil rights case the circuit court should apply the following five, non-exclusive factor test to decide whether to appoint counsel for the purpose of preparing or amending the petitioner's complaint:

> (1) [W]hether the merits of the indigent's claim are colorable; (2) the ability of the indigent plaintiff to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent litigant to present the case; and (5) the complexity of the legal issues raised by the complaint.

*Merritt v. Faulkner,* 697 F.2d 761, 764 (7th Cir.1983) *citing Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981) *(per curiam ).*

Under this test there will be many instances where the trial judge will decide that the petitioner needs no help preparing his complaint. In fact, 28 U.S.C. § 1915(d) [1979] specifically empowers the federal courts to dismiss a complaint without issuance of process when examination of the record reveals an action is "frivolous or malicious." *Boyce v. Alizaduh,* 595 F.2d 948 (4th Cir.1979). *W.Va.Code,* 59–2–1 [1973] does not contain the same specific language mandating dismissal, but the structure of the statute, which reposes considerable discretion in the circuit courts, fairly implies that the circuit courts are free to dismiss frivolous or malicious complaints.

To determine whether a complaint is frivolous, a circuit court must "find 'beyond doubt' and under any 'arguable' construction, 'both in law and in fact' of the substance of the plaintiff's claim that he would not be entitled to relief." *Boyce v. Alizaduh,* 595 F.2d at 952. A complaint's maliciousness is based on the litigant's intent and is most frequently evidenced by a multiplicity of suits. *See* Bagwell, *Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits,* 95 F.R.D. 435 (1982). Finally, when a particular litigant has flooded the court with "frivolous, repetitive complaints," the circuit court may impose a system of prefiling review. *Graham v. Riddle,* 554 F.2d 133 (4th Cir.1977).

If the trial judge decides to assign counsel after applying the five factor *Maclin* test, the appointment shall last at least through the preparation of the petitioner's complaint. Once the complaint has been properly prepared, the civil rights litigant, by virtue of 42 U.S.C. § 1988 [1980] may be in substantially the same position as the indigent litigant in the "Fee Generating Case." Certainly at this point it is no longer difficult to evaluate the merits of the indigent's claim. Because 42 U.S.C. § 1988 [1980] allows the award of attorney's fees to prevailing plaintiffs, an indigent prisoner with a meritorious civil rights claim *may* be expected to find a lawyer to take his case. However, we recognize that winning even meritorious cases is often difficult and the fee awards sufficiently parsimonious that cases of *public* importance may not be taken exclusively on a fee generating basis. As with other issues in this thorny area of prisoners' rights, whether to continue the assignment of appointed counsel beyond the initial preparation of the complaint is a matter that must be reposed in the sound discretion of the circuit court.

### III

Under our analysis, it is within the discretion of the Circuit Court of Randolph County whether to appoint counsel in Mr. Oxier's case. As we have stated:

> "A writ of mandamus will not issue unless three elements coexist—(1) a clear right in the petitioner to the relief sought; (2) a clear legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). Accordingly, we direct the Circuit Court of Randolph County to prepare a list of lawyers willing to review Mr. Oxier's fee generating claims, and to make this list available to Mr. Oxier.

No. 17085—Writ denied.

No. 17086—Writ awarded as moulded.